COFFEY, and another, Plaintiffs-Respondents, v. CITY OF MILWAUKEE, and another, Defendants-Appellants: ONE FIFTY TWO, INC., and another, Defendants-Respondents.

*No. 75-213. Argued November 1, 1976.—Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 132.)

For the appellants there was a brief by *James B. Brennan,* city attorney, and *Charles R. Theis,* assistant city attorney, and oral argument by *Mr. Theis.*

There was a joint brief for plaintiffs-respondents by *Robert E. Sutton* of Milwaukee; and for defendants-respondents by *Reginald W. Nelson* and *Whyte & Hirschboeck, S. C.* and oral argument by *Mr. Nelson,* all of Milwaukee.

CONNOR T. HANSEN, J. William Coffey was a tenant in an office building owned by One Fifty Two, Inc. While such tenant, he sustained a loss as a result of a fire in the building. The St. Paul Insurance Companies (hereinafter St. Paul) insured Coffey against loss or damage by fire. Apparently the liability of St. Paul to Coffey has been settled.

Coffey and St. Paul commenced an action for damages against the City of Milwaukee, LeGrand, One Fifty Two, Inc., and Royal Globe. One Fifty Two and Royal Globe cross-complained against the City of Milwaukee and LeGrand for contribution in the event One Fifty Two and Royal should be determined to be liable to Coffey and St. Paul.

The complaint alleges that the City and LeGrand were negligent in that certain standpipes provided to furnish the necessary water to fight the fire on the floor where Coffey's offices were located were defective and had not been properly inspected. The cross-complaint of One Fifty Two and Globe against the City and LeGrand reasserts the same allegations, and in each instance it is alleged that such negligence was the proximate cause of any loss or damage alleged to have been sustained by the respective parties.

The City and LeGrand demurred to the complaint of Coffey and St. Paul and to the cross-complaint of One Fifty Two and Royal Globe. The demurrers were overruled and this appeal followed.

The complaint of Coffey and St. Paul also alleges a safe-place cause of action for the recovery of damages against the owners of the building. This appeal does not directly concern that cause of action.

We are of the opinion that this appeal presents two issues for resolution:

1. Do the complaint and cross-complaint state facts sufficient to constitute a cause of action?

2. If so, should the demurrers nevertheless be sustained on the ground that under the facts alleged, as a matter of public policy, the City and LeGrand should not be held liable?

The pertinent allegations of the pleadings are:

"9. That on January 21, 1974 the Milwaukee Fire Department was notified of a fire in progress at the said Caswell Building and did respond in ample time to control and extinguish said fire except that when the fire department appeared on the premises it was unable to furnish the necessary water to fight the fire on the floor where the offices of the plaintiff were located because the standpipes by which the water was to be distributed were defective and water in necessary quantities and force was not able to be utilized in time to extinguish the fire in the offices of the plaintiff, COFFEY.

"10. That the defendants ALEX P. LeGRAND and the CITY OF MILWAUKEE were negligent in that agents of said defendants had at periodic intervals prior to January 21, 1974 been obliged to and did inspect the Caswell Building for the purpose of examination of the building and the standpipes thereon for safety purposes and that despite said inspections the defendants failed and neglected to detect the defective standpipes and/or to order replacement of said defective standpipes all to the damage of the plaintiff as further described in paragraph 14."

The rules for a trial court to apply in ruling on demurrers, and those followed by this court in reviewing orders overruling demurrers, have been stated many times. Recently they have been reviewed in *International*

*Foundation of Employee Benefit Plans, Inc. v. Brookfield,* 74 Wis.2d 544, 247 N.W.2d 129 (1976). We do not restate them here.

## CAUSE OF ACTION.

For the purposes of these proceedings, the following facts must be accepted as true: (1) That the building inspector, LeGrand, was obligated to inspect the standpipes in the Caswell Building and that he actually undertook to inspect such standpipes periodically for safety purposes; (2) that because such inspections were performed in a negligent manner, the building inspector failed to detect the fact that the standpipes were defective and/or failed to order replacement of the same; and (3) that Coffey's damages were proximately caused and contributed to by such defective standpipes.

In order to constitute a cause of action for negligence there must exist: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Falk v. Whitewater,* 65 Wis.2d 83, 85, 221 N.W.2d 915 (1974); *Padilla v. Bydalek,* 56 Wis.2d 772, 776, 203 N.W.2d 15 (1973).

On the face of the complaint and cross-complaint, it is readily apparent that the necessary elements were properly pleaded. Yet that alone does not wholly validate the complaint and cross-complaint. The allegation of duty, involving a conclusion of law, is not admitted as true. Whether a duty to the plaintiff-Coffey existed is a question of law for this court to properly decide on demurrer. Furthermore, the City of Milwaukee and Le Grand assert that even if such a duty existed, LeGrand

would not be liable by virtue of the doctrine of governmental immunity as it exists in Wisconsin today.

If a duty did not exist, or if the City of Milwaukee and LeGrand were cloaked in the doctrine of governmental immunity, then the demurrers should have been sustained. If a duty did exist and if governmental immunity was not applicable, the demurrers were properly overruled.

In *Holytz v. Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962), this court abrogated the doctrine of governmental immunity, holding that the abrogation should apply broadly to torts, whether by commission or omission. In *Holytz, supra,* the court stated at pages 39, 40:

"Perhaps clarity will be afforded by our expression that henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity. In determining the tort liability of a municipality it is no longer necessary to divide its operations into those which are proprietary and those which are governmental. Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is only as to those harms which are torts that governmental bodies are to be liable by reason of this decision.

"This decision is not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions. . . .

". . .

". . . By reason of the rule of *respondeat superior* a public body shall be liable for damages for the torts of its officers, agents, and employees occurring in the course of the business of such public body."

The portion of the *Holytz* decision dealing with legislative, judicial or quasi-legislative or quasi-judicial functions, was codified in sec. 895.43(3), Stats.[1]

---

[1] "(3) No suit shall be brought against any political corporation, governmental subdivision or any agency thereof for the in-

The City of Milwaukee and LeGrand contend that a building inspector's functions are quasi-judicial in nature, and as such, in the exercise of those functions, the building inspector is immune from liability for torts under the provisions of sec. 895.43(3), Stats. They cite as their sole support *Lindemann v. Kenosha,* 206 Wis. 364, 240 N.W. 373 (1932).

The reliance on *Lindemann* is misplaced. That case was decided long before the *Holytz* decision and it dealt with the action of a building inspector in revoking a building permit which had previously been issued. There the court held that since the issuance or revocation of a building permit was a governmental function, the building inspector was immune from tort liability under the law as it then existed. The court, in citing several foreign jurisdiction cases, indicated that the action to issue or revoke a building permit was of a judicial or a quasi-judicial character. *Lindemann, supra,* 373.

The facts also distinguish this case from *Lindemann.* The concern here is not with the issuance or revocation of a building permit, an action which admittedly may be characterized as quasi-judicial, but with the inspection of buildings under the provisions of sec. 101.14(2)(a), (b) and (c), Stats. The question is whether such inspection can properly be categorized as involving a quasi-judicial act.

The City of Milwaukee and LeGrand argue that the overall enforcement of the building code is quasi-judicial in nature. However, it is the categorization of the specific act upon which negligence is based and not the categorization of the overall general duties of a public

tentional torts of its officers, officials, agents or employes nor shall any suit be brought against such fire company, corporation, subdivision or agency or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

officer which will dictate whether or not the provisions of sec. 895.43(3), Stats., apply to enable the municipality to escape liability.

Whether the inspection of buildings for safety and fire prevention purposes under sec. 101.14, Stats., involves a quasi-judicial function has not been specifically addressed by this court. This court has, however, in *Salerno v. Racine*, 62 Wis.2d 243, 214 N.W.2d 446 (1974), held that the removal of a police officer from duty involved a quasi-judicial action. In determining that proceedings under sec. 62.13(5), were quasi-judicial in nature, this court noted the following characteristics as pertinent: (1) The exercise of discretion on the part of a public officer to file or not to file charges; (2) the requirement that there be a public hearing on the charges before a specially designated board; and (3) the imposition by the board of an appropriate penalty based upon the record of the hearing. *See also: State ex rel. Richey v. Neenah Police & Fire Comm.*, 48 Wis.2d 575, 180 N.W.2d 743 (1970).

The procedural characteristics set forth in the *Salerno* opinion correctly state the minimum requirements for determining whether or not an action is quasi-judicial. When the procedures involved in a proceeding approach the traditional judicial requirements of notice and hearing, the exercise of discretion, and a decision on the record, then the action can be said to be quasi-judicial.

None of those characteristics are present in the conducting of an inspection of a building under sec. 101.14, Stats. The duty to inspect is statutorily imposed. There is no discretion to inspect or not inspect. Violations exist or do not exist according to the dictates of the regulations governing the inspection, and not according to the discretion of the inspector. As to the actual conducting of the inspection, no essentially judicial procedures are accorded to the building owner. Only when it is determined that violations do exist, might quasi-judicial ac-

tions take place involving enforcement procedures. But the actual inspection as is involved here does not involve a quasi-judicial function.

■ The complaint and cross-complaint in the instant case were not properly demurrable on the grounds of municipal immunity from tort liability.

On the issue of duty, we would point out that *Holytz, supra,* did not create any new liability for a municipality; what it did was remove the defense of municipal immunity from tort liability. Therefore, the question now to be resolved is whether the complaint and cross-complaint which allege a duty, are correct in their assertions that a duty of the City and LeGrand did exist.

The City of Milwaukee and LeGrand contend that the duties imposed on the building inspector by the applicable statutes with respect to fire safety inspections are clearly duties owed to the public in general and not to the specific plaintiff in this case. They argue further that there can be no liability on the part of a municipality for the breach of such a "public duty."

In *Scheeler v. Bahr,* 41 Wis.2d 473, 477, 164 N.W.2d 310 (1969), this court stated:

"This situation is determinative of the duty imposed upon the defendant. 'Duty' is defined by Prosser, *Law of Torts* (3d ed.), p. 331, sec. 53, as:

" '. . . a question of whether the defendant is under any obligation for the benefit of the particular plaintiff . . . .

" 'A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'

"Thus, the first question imposed upon a court is to determine the duty placed upon the defendant by the facts as alleged. . . ."

In *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974), this court defined "duty" at pages 483, 484, stating:

". . . The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act. . . .

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs."

The foregoing statement of duty was recognized in *De Bauche v. Knott,* 69 Wis.2d 119, 230 N.W.2d 158 (1975).

In support of its position on "public duty" versus duty to the specific plaintiff, the City and LeGrand direct our attention to *Modlin v. City of Miami Beach,* 201 So.2d 70 (Fla. 1967); *Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 N.W.2d 158 (1972); and *Duran v. City of Tucson,* 20 Ariz. App. 22, 509 Pac.2d 1059 (1973). In each of these jurisdictions, the rule of municipal immunity from tort liability has been abrogated. While the cases from each of these jurisdictions are well reasoned, the concept of duty in tort liability therein stated, does not comport with what we believe to be the established concept in this state. Duty as conceived by those courts as it relates to municipal liability for torts, is, in a general statement reflected in *City of Tampa v. Davis,* 226 So.2d 450, 454 (Fla. App. 1969).

"We conclude, therefore, that in the light of Modlin, a municipality is liable in tort, under the doctrine of respondeat superior, when its agent or employee commits a tort in the performance, or by the nonperformance, of an executive (or administrative) duty within the scope of a governmental function, *only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in*

*contact in a direct transaction or confrontation.* The duty imposed on the agent or employee by virtue of such a relationship the 'special and direct' interest of the private individual arises, is the 'special duty' discussed in *Modlin.* . . ."

We are of the opinion, that were we to adopt such a position on municipal liability in tort it would be inconsistent with the past decisions of this court in the area of municipal liability for tort; the definition of "duty" set forth in *Scheeler v. Bahr, supra,* and *A. E. Investment v. Link Builders, Inc., supra,* and with our holding in regard to government responsibility for torts as expressed in *Holytz, supra,* p. 40.

■■ The concept of duty in Wisconsin, as it relates to negligence cases is inexorably interwoven with foreseeability. Foreseeability is a fundamental element of negligence. *Padilla, supra,* 777; *Meihost v. Meihost,* 29 Wis.2d 537, 545, 139 N.W.2d 116 (1966). Each individual is held, at the very least, to a standard of ordinary care in all activities. This court in *Antoniewicz v. Reszczynski,* 70 Wis.2d 836, 857, 236 N.W.2d 1 (1975), stated:

". . . By such standard of ordinary care, we mean the standard that is used in all other negligence cases in Wisconsin. Typical of such formulations is that appearing in *Osborne v. Montgomery* (1931), 203 Wis. 223, 236, 234 N.W. 372. *See also: Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N.W.2d 29; *Schilling v. Stockel* (1965), 26 Wis.2d 525, 133 N.W.2d 335. Under that test, as we have repeatedly stated, negligence is to be determined by ascertaining whether the defendant's exercise of care foreseeably created an unreasonable risk to others. That test is to be applied at the negligence phase of the analysis to the world at large and not to the particular plaintiff. In this respect, our analysis of negligence does not follow the Cardoza majority opinion in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99. We rather rely upon the Andrews dissenting rationale that, if the defendant

has been negligent under that standard, the question is one of cause—substantial factor, *i.e.,* cause in fact, and proximate cause, which may include policy factors that may exclude liability in the particular circumstances. . . ."

The pertinent past decisions of this court in the area of municipal tort liability may be divided into two categories: the sewer cases, and the stop sign cases.

In *Armour v. Wisconsin Gas Co.,* 54 Wis.2d 302, 195 N.W.2d 620 (1972), the plaintiff was injured in a gas explosion which occurred in a sewer tunnel which the construction company he was working for was building for the city of Milwaukee. The plaintiff brought suit against the gas company for failure to properly and adequately inspect its gas system when it knew that sewer lines were being dug. The gas company served a third-party complaint against the city of Milwaukee alleging that the city undertook to oversee and inspect the work done by the construction company and that the city's negligence in overseeing and inspecting caused the explosion.

The city demurred to the third-party complaint on the grounds that no liability existed because it owed no specific duty to the plaintiff to inspect or supervise the construction of its own tunnels by the construction company.

This court specifically rejected the contention of the city, relying upon its earlier sewer inspection and supervision cases of *Hennington v. Valuch,* 19 Wis.2d 260, 120 N.W.2d 44 (1963), and *Frew v. Dupons Construction Co.,* 37 Wis.2d 676, 155 N.W.2d 595 (1968). In none of the cases was there any indication that the municipality's officer owed any special duty to any particular plaintiff over and above the duty owed generally to the public. *See also: Freitag v. Montello,* 36 Wis.2d 409, 153 N.W.2d 505 (1967). In *Armour,* specifically, the at-

tempt to make the distinction a critical factor in the demurrer action, was unavailing to the city.

While it might be argued that the sewer cases are distinguishable because therein the duties to inspect and supervise arose from contract and not from statute, we believe such an argument would be without merit. It does not matter, for the purposes of the imposition of liability, how the duty arises. It can arise via contract or via statute. *American Mut. Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 48 Wis.2d 305, 179 N.W.2d 864 (1970) ; *Wulf v. Rebbun,* 25 Wis.2d 499, 131 N.W.2d 303 (1964). The critical factor is the existence of the duty.

The stop sign cases are best exemplified by this court's holdings in *Firkus v. Rombalski,* 25 Wis.2d 352, 130 N.W.2d 835 (1964), and *Chart v. Dvorak,* 57 Wis.2d 92, 203 N.W.2d 673 (1973). In *Firkus,* this court held that although a town had no affirmative duty to erect a stop sign in the first instance, having done so, it was incumbent upon the town to properly maintain the sign as a safety precaution to the traveling public. Although the *Firkus* decision discussed the issue of reliance upon the stop sign's existence, such statements were clarified and essentially withdrawn in *Naker v. Town of Trenton,* 62 Wis.2d 654, 215 N.W.2d 38, 217 N.W.2d 665 (1974).

Both the erection and maintenance of stop signs is a duty owed by the municipality generally to the public. Yet, as in the sewer cases, this court has not required the existence of a *special* duty owed by the the municipality before allowing recovery in causes of action based upon improperly maintained traffic signs.

The standard of "duty" which this court has previously adopted in *Scheeler* and *A. E. Investment Corp.*, and which is reflected in the sewer and stop sign cases, encompasses the concept of duty in the instant case. A building inspector must be held to have foreseen that his alleged negligence in performing the required inspec-

tion might have foreseeably resulted in harm to someone. Furthermore, under the rule of law stated in Restatement, 2 *Torts* 2d, p. 142, sec. 324A,[2] and specifically adopted by this court in *American Mut. Liability Ins. Co.*, *supra*, 313, the building inspector, once he did undertake to inspect the building had a duty to exercise reasonable care in so doing. That duty flowed to the plaintiffs herein.

The "public duty"—"special duty" distinction espoused in the cases cited by the City of Milwaukee and LeGrand set up just the type of artificial distinction between "proprietary" and "governmental" functions which this court sought to dispose of in *Holytz, supra*. Any duty owed to the public generally is a duty owed to individual members of the public.

■ The complaint and cross-complaint were not demurrable on the grounds that the building inspector was negligent in performing merely a "public duty." Under the circumstances of this case, there is no distinction to be drawn between a "public duty" and a "special duty."

## PUBLIC POLICY.

■ In *Hass v. Chicago & North Western Ry. Co.*, 48 Wis.2d 321, 179 N.W.2d 885 (1970), this court held that

---

[2] *"Sec. 324A. Liability to Third Person for Negligent Performance of Undertaking.*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

the imposition of liability did not always flow from a finding of negligence and cause-in-fact, stating at p. 326:

". . . However, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy."

*See also: Howard v. Mt. Sinai Hospital, Inc.*, 63 Wis.2d 515, 519, 520, 217 N.W.2d 383, 219 N.W.2d 576 (1974); *Padilla, supra,* 779; *Colla v. Mandella,* 1 Wis.2d 594, 599, 85 N.W.2d 345 (1957); *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29 (1952).

The application of the public policy considerations is solely a function of the court. *Hass, supra,* 326; *Schilling v. Stockel,* 26 Wis.2d 525, 531, 133 N.W.2d 335 (1965); *Colla, supra,* 599. Thus this court has held that even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Dumer v. St. Michael's Hospital,* 69 Wis.2d 766, 774, 233 N.W.2d 372 (1975); *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 517, 219 N.W.2d 242 (1974); *Colla, supra,* 598, 599.

This court has, in the past, decided the above public policy issues on demurrer. *Antoniewicz, supra; Rieck,*

*supra; Hass, supra; Colla, supra.* In those cases and under the circumstances therein set forth, this court held that a full factual resolution of the cause of action by trial was not required, or as in the *Antoniewicz Case* that the trial judge had already exhaustively and painstakingly addressed himself to the policy considerations. In *Hass, supra,* at p. 326, 327, this court stated:

"The application of public policy considerations is solely a function of the court . . . and does not in all cases require a full factual resolution of the cause of action by trial before policy factors will be applied by the court. There may well be cases, of course, where the issues are so complex, or factual connections so attenuated, that a full trial must precede the court's determination. . . ."

In the cases of *Dumer, supra; A. E. Investment Corp. v. Link Builders, Inc., supra; Weiss v. Holman,* 58 Wis.2d 608, 207 N.W.2d 660 (1973) ; *Padilla, supra;* and *Kornitz v. Earling & Hiller, Inc.,* 49 Wis.2d 97, 181 N.W.2d 403 (1970), this court declined to consider the public policy issues on demurrer.

In *Kornitz, supra,* 103, this court held that under those circumstances a full factual resolution appeared to be necessary to a fair and complete evaluation of the policy considerations involved in determining the issue as to what liability, if any, attached to the interim mortgage lender. In *Padilla, supra,* 779, this court stated:

"While this court has decided the public policy issue on demurrer, it is usually better practice to submit the issue to the jury insofar as determining the issues of negligence and causation in the same manner as in the ordinary case. . . ."

The decisions in *Dumer, supra; A. E. Investment Corp., supra;* and *Weiss, supra;* followed the reasoning and holding of *Kornitz, supra;* and *Padilla, supra.*

We conclude the dispute here involves public policy considerations and requires the balancing of various policy factors, in determining whether there is to be liability at all, and, if so, the extent thereof. The instant case involves the complex issue of municipal tort liability arising out of the alleged negligence of a building inspector in carrying out fire inspections. The factual connections are so attenuated that a full trial should precede this court's determination of the policy considerations.

At the demurrer stage in the case before us, a sufficient factual basis is not presented for considering, evaluating and resolving the public policy issues involved, including the impact such liability would have upon municipalities. A trial court or jury finding as to actual negligence, damage and the causal relationship between them would be material and helpful in evaluating the public policy considerations, and we do not here address them.

*By the Court.*—Order affirmed.