Lloyd F. HAWES and Judith A. Hawes, his wife, Plaintiffs-Respondents and Cross-Respondents,

v.

GERMANTOWN MUTUAL INSURANCE COMPANY, a mutual company of Wisconsin, Defendant-Cross-Appellant and Cross-Respondent,

Ronald PELKY, Patricia Pelky, his wife, Marris-Moran Homes, Inc., a Wisconsin corporation, Alex Marris and Thomas Moran, Defendants,

CITY OF MUSKEGO, a municipal corporation, and Gerald P. Lee, Defendants-Appellants and Cross-Respondents,

TRICO MASONRY, INC., a corporation, Defendant-Third Party Plaintiff, Cross-Respondent and Cross-Appellant,

DAL CORPORATION, Robert J. Schenk d/b/a Schenk Grading & Trucking and Jerome Bence d/b/a Chips Grading, Third-Party Defendants.

Court of Appeals

*No. 80–299. Submitted on briefs October 8, 1980.— Decided June 5, 1981.*
(Also reported in 309 N.W.2d 356.)

528

For the defendants-appellants and cross-respondents City of Muskego and Gerald P. Lee the cause was submitted on the briefs of *Law Office of C. Donald Straub* by *Julie J. Darnieder,* of counsel, of Milwaukee.

For the defendant-third party plaintiff-cross-respondent and cross-appellant Trico Masonry, Inc., the cause was submitted on the briefs of *Simarski, Goodrich & Stack, Ltd.,* of Milwaukee.

For the defendant-cross-appellant and cross-respondent Germantown Mutual Insurance Company the cause was submitted on the briefs of *Fiorenza, Weiss, Amato, Hodan & Belongia, S.C.,* by *Frank W. Doster,* of Milwaukee.

For the plaintiffs-respondents and cross-respondents Lloyd F. Hawes and Judith A. Hawes, his wife, the cause was submitted on the brief of *Reiske and Reiske* by *Peter F. Reiske,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J. This case arises out of the collapse of a basement wall of plaintiffs' home. At the close of a trial to the court, the trial court awarded $12,864 for damage to the building, $1,752 for loss of personal property to the plaintiffs jointly, and $1,500 for negligent infliction of emotional distress to plaintiff Judith A. Hawes. The court apportioned causal negligence 50% to the masonry subcontractor who built the basement wall (Trico), and 50% jointly to the city of Muskego (Muskego) and its building inspector (Lee). Plaintiffs' homeowner's insurance company (Germantown Mutual) was ordered to pay the property damage amounts, with indemnification from Trico and Muskego/Lee.

On appeal, Trico and Muskego/Lee challenge the damage awards and the liability apportionment. Germantown Mutual cross-appeals from the trial court's determination of liability arising from its homeowner's policy. We modify that part of the judgment holding Germantown Mutual liable for special damages not covered by its policy, and affirm the balance of the judgment.

## STANDARD OF REVIEW

"[T]he standard for reversal is heavily weighted on the side of sustaining trial court findings of fact in cases tried without a jury." *Leimert v. McCann,* 79 Wis. 2d 289, 296, 255 N.W.2d 526, 530 (1977). This is because

[t]he findings of the trial court and its decision must be sustained unless they are against the great weight and clear preponderance of the evidence. To reverse this court must determine that the evidence in support of a contrary finding constitutes the great weight and clear preponderance of the evidence. *Ludke v. Egan,* 87 Wis. 2d 221, 230, 274 N.W.2d 641, 645 (1979). *Accord, Fidelity & Deposit Co. v. First National Bank,* 98 Wis. 2d 474, 484–85, 297 N.W.2d 46, 51 (Ct. App. 1980).

## DAMAGES

"In negligent torts, mental distress is compensable only when there is an accompanying or resulting physical injury." *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 675, 292 N.W.2d 816, 822 (1980). "[E]motional stress must be manifested by physical injuries in actions based on negligence rather than intentional conduct." *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 227, 177 N.W.2d 83, 86 (1970).

Trico and Muskego/Lee assert that plaintiffs failed to prove that the emotional trauma, suffered by Mrs. Hawes when the wall collapsed at her feet, was manifested by any resulting physical injury.

The requirement of accompanying or resulting physical injury is designed to distinguish valid from fraudulent claims, *see Wright v. Hasley,* 86 Wis. 2d 572, 576, 273 N.W.2d 319, 321 (1979), and to provide some effective means of evaluating a claim of mental injury. *See School District No. 1 v. DILHR,* 62 Wis. 2d 370, 377, 215 N.W. 2d 373, 377 (1974).

The record in this case establishes that Mrs. Hawes was in the basement when the wall collapsed inward. While retrieving clothing from the washing machine in the basement[1] Mrs. Hawes heard the wall give way with an explosive report. She realized she was in danger of being crushed by the collapsing wall and fled to the basement stairs. She reached the stairs as the wall collapsed around her, and suffered an abrasion to her heel from falling wall fragments as she fled up the stairs. As a result of this traumatic experience, Mrs. Hawes complained of anxiety, panic during rainstorms, impairment of social communication skills, and uncontrol-

---

[1] The washing machine was destroyed by the wall collapse.

lable crying spells for no apparent reason. She also suffered loss of sleep and appetite, resulting in an eleven-pound weight loss.

We agree with Trico and Muskego/Lee that Mrs. Hawes' abrasion, alone, is not accompanying injury sufficient to remove an emotional distress claim from the realm of speculation. An eleven-pound weight loss, caused by loss of sleep and appetite, is also, standing alone, arguably insufficient resulting physical damage to distinguish a valid from fraudulent emotional distress claim. In this case, however, the two, coupled with substantial evidence of both Mrs. Hawes' fear for her own safety, *see Ver Hagen v. Gibbons, supra,* 47 Wis. 2d at 224, 177 N.W.2d at 85 (discussing *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935)), and a direct causal relationship between the emotional distress and the traumatic collapse of the wall, *see Redepenning v. Dore,* 56 Wis.2d 129, 143, 201 N.W.2d 580, 588 (1972), provide a sufficient basis for the trial court to determine that this was not a fraudulent claim. The trial court's award of $1,500 for negligent infliction of emotional distress in this case was not contrary to law nor the great weight and clear preponderance of the evidence.

Trico and Muskego/Lee, with Germantown Mutual concurring, assert that plaintiffs failed to prove with requisite certainty the amount of damages to miscellaneous personal property stored in the basement. The trial court valued damage to these items at $1,000 of the total $1,752 personal property award. Lloyd Hawes, with help from a friend and his mother, personally inventoried and recorded each item destroyed by the wall collapse. He and his wife testified that what few receipts they had were also destroyed by the collapse. "[W]here the fact of damage is clear and certain, but the amount

is a matter of uncertainty, the trial court has discretion to fix a reasonable amount. . . . Simply because the amount is uncertain, the trial court should not deny recovery altogether." *Cutler Cranberry Co. v. Oakdale Electric Coop.*, 78 Wis. 2d 222, 234–35, 254 N.W.2d 234, 240–41 (1977) (citations omitted).

The fact of damage to the 107 items listed by plaintiffs is not challenged on appeal, and the five-page, single-spaced list includes furniture, power tools, wool carpeting, major appliances, and clothing. Although plaintiffs' attempts at valuing these items were uncertain, the $1,000 awarded for the miscellaneous personalty is not against the great weight and clear preponderance of the evidence.

Trico and Muskego/Lee, with Germantown Mutual joining, argue that the trial court erred when it allowed as recovery for damage to plaintiffs' home both the cost of repair and diminution in value. They cite the rule of *Laska v. Steinpreis*, 69 Wis. 2d 307, 314, 231 N.W.2d 196, 200 (1975), that where both cost of repair and diminution in value are in evidence, the proper measure is the lesser of the two. The fallacy in their reliance on this rule is that the diminution in value it addresses is "the difference between the reasonable market value of the property immediately before the injury . . . and its reasonable market value immediately after the injury," i.e., before the injury is repaired. *Laska, supra*, 69 Wis. 2d at 313, 231 N.W.2d at 200. No such evidence was offered in this case, so the cost of repair figure must stand. *Id.* at 314, 231 N.W.2d at 200.

The diminution in value which the trial court awarded in addition to cost of repair does not fall within the rule of *Laska*, but is in the nature of special damages. It reflects evidence that the repairs, when made, will not restore the property to its pre-collapse value. There

is evidence that the basement collapse will have to be disclosed to any prospective purchasers of the home, that the new wall, built by the same masonry company who built the failed wall (Trico), contains defects in design which may cause it to fail again, and that this latter fact may also have to be disclosed to prospective purchasers. The trial court did not err in awarding cost of repair, and its finding that even after these repairs have been made market value will be impaired is not against the great weight and clear preponderance of the evidence.

## LIABILITY

The trial court found Muskego/Lee and Trico each 50% causally negligent because the collapsed wall as built violated two provisions of the Municipal Building Code:[2] it had only one pilaster; and it had solid-top ("capped") blocks in the top course rather than solid blocks. Muskego/Lee and Trico contend that the trial court's finding of building code violations is contrary to the great weight and clear preponderance of the evidence. We disagree.

The building code requires pilasters where the unsupported length of a foundation wall exceeds thirty times its thickness. As Trico's brief points out, there is no dispute that simple application of this formula to the wall in question requires a pilaster every twenty-five feet. Because it is also undisputed that the wall in question exceeded fifty feet, the trial court was correct in concluding that two pilasters were required.[3]

---

[2] At all times relevant to the claimed violations, Muskego applied this code to one- and two-family dwellings. One- and two-family dwellings are now governed by Wis. Ad. Code, secs. Ind. 20–25 (Uniform Dwelling Code, effective June 1, 1980).

[3] It seems clear from the record that if the unsupported length of the collapsed wall had not exceeded fifty feet, plaintiffs could

Muskego/Lee and Trico argue that the width of the pilaster or pilasters installed should be subtracted from the unsupported length figure. This additional computation would result in a wall length of less than fifty feet, so only one pilaster would be required. This argument assumes that the pilaster itself constitutes "support." The code defines "pilaster" as a "projection of masonry . . . to *stiffen* a wall against lateral forces." (Emphasis added.) While the clear language of the code contemplates that a pilaster will *stiffen* a wall, the width of a wall where the pilaster is does not thereby become "supported," justifying its subtraction from the unsupported length figure.

Muskego/Lee argue that because the building inspector (Lee) has always subtracted the width of pilasters from the "unsupported length" figure, this interpretation of the code is controlling under the rule of *Mednis v. Industrial Commission,* 27 Wis. 2d 439, 444, 134 N.W.2d 416, 419 (1965) : "The construction and interpretation adopted by the administrative agency charged with the duty of applying the law is entitled to great weight in the courts." The cases cited by the court as support for

---

not complain, because the wall had one pilaster. The record establishes that the unsupported length of the collapsed wall only exceeded fifty feet by a few inches, which raises in our minds the questions of whether the plans and specifications originally called for a fifty-foot wall, and whether a wall exceeding fifty feet by only a few inches substantially complies with the code pilaster requirements. The record contains no plans or specifications showing this dimension, however, and no evidence that the variance by a few inches would result in no structural deficiency or weakness affecting health, safety or welfare. We note, however, that sec. 30.03 of the Municipal Building Code then in effect required compliance "in full" with code requirements, and that the code contained no provisions for variance. *Cf.* Wis. Ad. Code, sec. Ind. 20.19 (variance from a specific rule may be granted if variance does not result in lowering the level of health, safety and welfare intended by the specific rule.)

this rule show that it is applicable only where there is ambiguity in the law being applied, however. *See Trczyniewski v. City of Milwaukee*, 15 Wis. 2d 236, 240, 112 N.W.2d 725, 727 (1961) ("dilemma" as to meaning); *Wisconsin Axle Division v. Industrial Commission*, 263 Wis. 2d 529, 537b, 60 N.W.2d 383, 385 (1953) (reh.) ("sufficient obscurity" in meaning). There is no ambiguity in the building code provisions in this case. A length of wall which is unsupported does not become "supported" for sixteen inches where a pilaster is added for stiffening.

Trico argues that because the building inspector (Lee) testified that he followed the usual and customary procedure in approving the one-pilaster plan, lack of a second pilaster as required by the clear language of the code is not evidence of negligence. Although

[i]t is true that compliance with a customary practice furnishes evidence of due care, . . . [s]uch evidence is received for what it is worth, in view of all the circumstances of the particular case, and under proper instructions from the court as to its inconclusive nature the jury has the right to give it such consideration as they think it should receive in connection with all the other facts. *Marolla v. American Family Mutual Insurance Co.*, 38 Wis. 2d 539, 548, 157 N.W.2d 674, 679 (1968).

The trial court, as finder of fact, did not err in finding a code violation despite this evidence of custom.

The collapsed wall was built with solid-top blocks. The code states that "[a]ll masonry foundation walls shall be capped with solid masonry units." Muskego/Lee and Trico argue, again relying on Lee's interpretation and usual and customary application of the code, that this provision is unenforceable because it appears in a footnote, and if enforceable, is satisfied by use of solid-top

blocks.[4] This second contention is again controlled by the definitional section of the code, which allows no room for interpretation: "Masonry, Solid-Masonry built without hollow spaces." The footnote requiring solid masonry units in the top course of a foundation wall is an integral part of the code provisions on construction of foundation walls, and even if we felt there was sufficient confusion to warrant statutory construction, it is well-established that "effect is to be given, if possible, to each and every word, clause and sentence in a statute, and a construction that would result in any portion of a statute being superfluous should be avoided wherever possible." *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129, 135 (1980). The trial court did not err in giving effect to the footnote.

Trico argues that this second violation is inconsequential because the evidence establishes that use of solid blocks adds no lateral strength to a wall. The evidence also establishes that the collapse may have been avoided if the superstructure of the house had been attached to the wall, and that solid, as opposed to solid-top, blocks facilitated attachment because fittings could not be placed securely in solid-top blocks. The trial court's finding that this second code violation caused the collapse is

---

[4] The only plans in the record were presented by the plaintiffs and show a cross-section of the wall. The plans clearly specify use of solid block in the top course. If these were the plans submitted to Muskego/Lee, or if the plans submitted called for solid block, Muskego/Lee could not be liable for approval of them. We are also cognizant of the difficulty of ascertaining upon final inspection whether solid blocks were actually used in the top course. Muskego/Lee has raised neither of these arguments, however, and there is insufficient evidence in this record for us to address them. It is clear from the evidence and arguments on appeal, however, that Muskego/Lee would have erroneously approved plans and construction specifying solid-top blocks.

not contrary to the great weight and clear preponderance of the evidence.

Muskego/Lee contend that the trial court erred in imposing liability on a municipality without considering public policy factors, citing *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976), a case involving "the complex issue of municipal tort liability arising out of the alleged negligence of a building inspector in carrying out fire inspections." *Id.* at 543, 247 N.W.2d at 141. The court in *Coffey* concluded that the dispute "involve[d] public policy considerations and require[d] the balancing of various policy factors, in determining whether there is to be liability at all, and, if so, the extent thereof," but that "a full trial should precede this court's determination of the policy considerations." *Id.* at 543, 247 N.W.2d at 140–41. The court has subsequently indicated that it is the function of the trial court and this court to determine these considerations: "[A] full trial must precede the trial court's and appellate court's determination of the issue as to what liability, if any, attaches . . . ." *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 52, 288 N.W.2d 95, 112 (1980).

We begin by noting that the public policy issues are not fully developed by counsel in their briefs. Examination of the full trial transcript and trial court findings convince us, nonetheless, that it is not against public policy to hold Muskego/Lee liable. Liability here does not arise out of routine periodic inspections where the defect causing the injury is possibly concealed or easy to overlook. It arises out of improper application of a building code both when plans were approved for issuance of a building permit and when final construction was approved for issuance of an occupancy permit. It is neither unjust to expect the municipality to assume responsibility for approval of an unsafe basement wall, nor

is it unjust to allow recovery for the collapse and resulting damages. *See Stewart v. Wulf,* 85 Wis. 2d 461, 480, 271 N.W.2d 79, 88 (1978). The injuries here sustained are not remotely removed from the negligent approval of an unsafe wall. The injury is not wholly out of proportion with the culpability of the municipality, which the trial court apportioned at 50%,[5] nor is it highly extraordinary that approval of an unsafe wall would bring about its collapse. The injury is the kind that can be expected when an unsafe wall is allowed by the municipal authority to be built in violation of its own building code in a manner which was easily discoverable by a simple inspection of the plans, specifications, or the building. Allowance of recovery in this case for improper application of a safety code, rather than for mere oversight in inspection, does not place an unreasonable burden on the municipality, open the way for fraudulent claims, or enter a field with no stopping point. Successful litigants will still have to prove that specific code provisions were violated, and that the violations caused the injury sustained. Public policy does not preclude municipal liability for approval of plans and construction containing specific code violations where the injury is directly attributable to easily discoverable violations.[6]

[5] Counsel argues at this point that this apportionment is too wholly out of proportion with the nature of Muskego/Lee's acts, which it terms "passive negligence." This argument has nothing to do with *Coffey's* public policy factors, but raises the familiar challenge that the percentage of negligence attributed to a party was, in light of the facts, grossly disproportionate. *See, e.g., Stewart v. Wulf,* 85 Wis. 2d 461, 471, 271 N.W.2d 79, 84 (1978). After reviewing the entire record, we cannot say that it is manifest as a matter of law that the allocation was unreasonably disproportionate. *See Schuh v. Fox River Tractor Co.,* 63 Wis. 2d 723, 744, 218 N.W.2d 279, 287 (1974).

[6] We decide this case in favor of municipal liability by applying common law public policy analysis. This does not preclude legislative determination, based on public policy, of the desirability of

Trico does not raise public policy factors, but attempts to limit or eliminate liability through other arguments:

(1) a mason contractor is entitled to rely on the building inspector's approval of the plans submitted for issuance of a building permit;

(2) where a mason contractor blindly follows plans provided by the general contractor, negligence for constructing an unsafe wall should be imputed to the general contractor;

(3) the trial court should have apportioned negligence to the general contractor because the superstructure was not attached to the basement wall; and

(4) the trial court should have apportioned negligence to the general contractor because the lot was improperly graded.

The first three arguments ignore the undisputed fact that the only plans in the record require solid blocks in the top course. There was sufficient evidence presented at trial that Trico's failure to use solid blocks prevented attachment of the superstructure to the basement wall, depriving it of substantial lateral support. This failure is Trico's alone, and the trial court as finder of fact was free to afford evidence of custom as much as or as little weight as it deemed appropriate. *Marolla, supra.*[7]

---

municipal liability for erroneous approval of plans, specifications or buildings. We note without comment that the current Uniform Dwelling Code addresses the subject in Wis. Ad. Code, sec. Ind. 20.07(5): "Approval is not to be construed as an assumption of any legal responsibility for the design or construction of the dwelling or building component."

[7] We also note that Trico failed to produce any evidence regarding the specified length of the collapsed wall. We are unable to determine whether the wall with one pilaster exceeded fifty feet in compliance with the general contractor's plans, or whether this excess of a few inches was due to Trico's construction methods. *See* note 3, *supra.*

The fourth argument ignores credible evidence that had the wall been constructed without defects, it would not have failed even if the lot was improperly graded. The trial court's findings and apportionment are not against the great weight and clear preponderance of the evidence.

The trial court held that Germantown Mutual was liable to plaintiffs under its homeowner's policy for the full amount of property damage, but was entitled to recover that amount from Muskego/Lee and Trico. Germantown Mutual argues that:

(1) the risk was never covered in the first instance under the policy;

(2) the risk was specifically excluded under the policy;

(3) the personal property loss is specifically excluded; and

(4) the property damage award exceeds its contract liability.

The first argument relies on the following language: "This policy insures against . . . [c]ollapse of buildings or any part thereof but excluding loss to . . . *foundations* . . . except as the direct result of the collapse of a building. Collapse does not include settling, cracking, shrinkage, bulging or expansion." [Emphasis added.]

Germantown Mutual argues that the meaning of the term "foundations" is unambiguous, and its plain meaning encompasses basement walls in addition to underlying footings. "Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction." *Stanhope v. Brown County,* 90 Wis. 2d 823, 849, 280 N.W.2d 711, 722 (1979). The extensive trial record itself in this case stands as evidence of the varied reasonable construction of the term "foundation." Trico, who built the wall, admitted

in its answer that it had "performed cement work concerning the basement of the premises described," but denied allegations that it "constructed the foundation." Germantown Mutual's own expert witness distinguished between "the foundation itself" and "the basement wall" when drawing pictures during cross-examination, and consistently referred to the collapsed wall as a "basement wall." The building code provisions relevant to the collapsed wall used the term "foundation wall." Germantown Mutual's policy, in limiting its replacement cost liability, excludes from one of its formulas the cost of "brick, stone and concrete *foundations,* piers and other supports which are below the undersurface of the basement floor, or where there is no basement, which are below the surface inside the foundation walls." (Emphasis added).

We determine that the term "foundation" as used in the policy is ambiguous as applied to a basement wall and therefore reject Germantown Mutual's use of a dictionary to show the "plain meaning" of the term. *See Garriguenc v. Love,* 67 Wis. 2d 130, 134, 226 N.W.2d 414, 416–17 (1975). "In the event of ambiguity or obscurity, the language of a policy should be construed against the insurance company which drafted the policy." *Stanhope, supra,* 90 Wis. 2d at 849, 280 N.W.2d at 722. "[T]he test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood them to mean." *Ehlers v. Colonial Penn Insurance Co.,* 81 Wis. 2d 64, 74–75, 259 N.W.2d 718, 724 (1977). The terminology used by the witnesses at trial demonstrates that reasonable persons understood the term foundation not to include basement walls. The trial court did not err in determining that collapse of plaintiffs' basement wall

was included in "collapse of buildings or any part thereof" and not excepted as "loss to foundations."

We reject the contention that this interpretation binds Germantown Mutual to "a risk it did not contemplate and for which it has not been paid." *See Insurance Co. v. Universal Mortgage Corp.,* 82 Wis. 2d 170, 178, 262 N.W.2d 92, 96 (1978). The catastrophic collapse of plaintiffs' basement wall is contemplated by the language of the policy, which does not render the company liable for run-of-the-mill basement wall leakage and shifting problems.

Germantown Mutual contends that the trial court erred when it found inapplicable policy provisions which excluded loss "caused by, resulting from, contributed to or aggravated by" earth movement, surface water, or water below the surface of the ground "including that which exerts pressure on . . . foundations [or] walls."

In support of its contentions, Germantown Mutual marshalls evidence, including reports of plaintiffs' experts, which tended to show that the excluded conditions contributed to the collapse. "On appeal, this court will examine the record, not for evidence to support a finding which the trial court did not make, but for facts to support the finding the trial court did make." *First National Bank v. Nennig,* 92 Wis. 2d 518, 535, 285 N.W.2d 614, 623 (1979). Eyewitness testimony refuted a finding of surface water being present at or immediately preceding the collapse of the wall. Hypothetical assumptions of water below ground surface were refuted by eyewitness testimony that the ground was not saturated at the time of collapse, and by evidence that water below ground surface could not exert pressure until the ground was saturated. There was no evidence of earth movement preceding the collapse. The trial court's find-

ings are not against the great weight and clear preponderance of the evidence.

Germantown Mutual contends that the exclusions apply to the damage to personal property, which it alleges was occasioned by earth movement, surface water, or water beneath the surface entering the basement after the collapse of the wall. There was ample evidence for the trial court to find that this damage occurred simultaneously with and was caused solely by the wall collapse, which was of a sudden and violent nature, causing block fragments to abrade Mrs. Hawes' heel as she fled up the stairs.

Germantown Mutual contends that it is not liable under its policy for the $5,000 loss in market value of the home after repairs because the policy expressly limits recovery for loss to a covered building structure to the smaller of the replacement cost or cost of repair. We agree, and modify that portion of the judgment awarding plaintiffs $14,616 against Germantown Mutual by substracting $5,000. Judgment on Germantown Mutual's cross-complaints against Trico and Muskego/Lee is accordingly reduced by $2,500 each.

*By the Court.*—Judgment modified, and as modified, affirmed.