> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2018[*]
Decided August 16, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3612

| | |
|---|---|
| SHANE T. ROBBINS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-C-1128 |
| | |
| WILLIAM POLLARD, et al., | Lynn Adelman, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

William Robbins, a Wisconsin inmate, appeals the entry of summary judgment against him on two claims arising out of the mistaken delivery of medicine to him. The first claim asserts that the prison's policy of allowing correctional officers to deliver medicine to inmates violates the Eighth Amendment. The second claim contends that the correctional officer who gave him the wrong medication acted negligently.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

The district court reasoned that no evidence suggested that the prison's policymakers knew or ignored that the policy posed a substantial risk of harm to inmates, and the negligence claim failed as a matter of state law. We agree and affirm the judgment.

The Wisconsin Department of Corrections allows correctional officers to deliver medicine to inmates at Waupun Correctional Institution. Waupun's policy requires officers to receive repeated training on how to deliver medicine safely. To ensure that inmates receive the correct dosage at the right time, officers must compare the label on the medication package to the inmate's treatment record. Prison procedure also dictates that when an officer shows an inmate his medication, the officer must ask the inmate to concur that he is receiving the correct medicine, at the right time, and in the right dose.

Trevor Standish, a correctional officer, gave Robbins a 10-milligram dose of Doxepin in September 2015. This drug treats anxiety, depression, and insomnia. Robbins was not prescribed the drug, and Standish should not have given it to him. Standish also neglected to ask Robbins to verify that he was prescribed this drug. About half an hour after taking it, Robbins says, he experienced a painful headache that lasted several hours. The next morning his hands had become red and veiny, and later turned dark purple; he also began experiencing ringing in his ears that continues to this day.

Shortly after Standish gave the Doxepin to Robbins, Standish double-checked the records and realized his mistake. He swiftly reported the incident to a nurse who, within a couple of hours of the drug's delivery to Robbins, checked his vitals. Robbins told the nurse about his headache, and she told him to drink water to flush the drug out of his system. After her medical assessment of Robbins, the nurse determined that "there should be no issues." Another nurse followed up with Robbins two days later. Robbins told the nurse about the discoloration in his hands and feet. She told him that his handcuffs, not the medication, caused that color change.

Robbins sued over this error, but lost in the district court. He accused William Pollard, the warden of Waupun at the time, and Ann Scarpita, a health-services manager, of violating the Eighth Amendment by allowing officers to deliver medicine to inmates. Robbins also brought a state-law negligence claim against Standish for giving him the wrong medicine. Robbins told the district judge that he had received incorrect drugs from officers before, though he does not say when, how often, or if any harm resulted. He also cited an interrogatory response stating that 15 inmate grievances, filed between 2014 and 2016, mentioned a "medication error" but gave no further details. The district judge granted summary judgment on the federal claim. He observed that Robbins did not state the frequency or harm of any drugs

misdelivered to him, and the other inmates' grievances about medication errors did not state whether the "error" was misdelivery. Therefore, a factfinder could not infer that the prison's policy created a substantial risk of serious harm, let alone one that the defendants knew about. Finally, Robbins's negligence claim against Standish failed. His pre-filing notices of claim mailed to the state's Attorney General did not identify Standish by name, so it did not meet the state-law requirement that the notice include "the name of the state officer, employee or agent involved." WIS. STAT. § 893.82(3).

Robbins's opening brief on appeal is sparse. But we have reviewed the record de novo to assure ourselves that the district court's decision is sound. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). We begin with Robbins's Eighth Amendment claim. He argues that correctional officers do not always follow Waupun's policy requiring that they match the delivered drugs to the recipient's medical record. But to get past summary judgment on his claim against the warden and health-services manager, Robbins had to supply evidence suggesting that they knew or recklessly ignored that officers often violated this policy to the detriment of prisoners. For only then would these two defendants have been deliberately indifferent to a substantial risk of harm to Robbins's health, in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).

Nothing in the record suggests that the warden and manager knew about or ignored signs that correctional officers regularly disregard drug-delivery procedures and harm prisoners. To the contrary, the single incident detailed in the record reflects that, although Standish made one error, he acted appropriately afterward. As soon as Standish realized that he had given Robbins the wrong medicine, he notified a nurse, who promptly attended to Robbins, and another nurse followed up later. Both nurses determined Robbins had no long-term adverse reactions to the drug, and no medical opinion contradicts this. Thus, no reasonable jury could conclude that, by allowing officers to deliver medicine to inmates, the warden and manager were deliberately indifferent to a substantial risk of harm to inmates like Robbins.

Citing *Flynn v. Doyle*, 630 F. Supp. 2d 987 (E.D. Wis. 2009), Robbins replies that he supplied evidence permitting an inference that the warden and manger ignored a substantial risk of harm. But the plaintiffs in *Flynn* presented evidence that correctional officers at that prison "routinely" administered "wrong doses to the wrong prisoner at the wrong times." *Id.* at 990. The 15 grievances that Robbins relies on, from inmates citing "medication error," are not comparable evidence, for three reasons. First, the interrogatory response does not describe the errors, so we do not know if, like in *Flynn*,

the errors were the misdelivery of medicine. Second, these grievances are just allegations, not findings, of error. Third the misdeliveries in *Flynn* occurred in a prison where officers did not receive training in proper medication delivery; Waupun officers, by contrast, do receive repeated training. *See id.* at 991. Robbins also says that he has more than once received the wrong drugs, but this assertion does not help his case resemble *Flynn* either. Robbins does not state how often this happened, whether any injury resulted, or who, if anyone, he told. So a trier of fact could not, as in *Flynn*, find that harmful mistakes are "routine" and that prison administrators are liable for them.

Robbins's Eighth Amendment claim fails for another reason, too. The claim requires that he show that he experienced serious adverse effects *because* he took Doxepin. *See Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002) (stating that plaintiff must produce evidence that injury had "causal connection" with alleged constitutional violation). He points to the painful headaches, skin discoloration, and ringing in his ears that occurred after he took the drug. But he has not supplied medical evidence that the one mistaken dose of Doxepin caused these effects. He submitted printouts from medical websites that list Doxepin's side effects, but the list does not include the effects that he experienced. And a Waupun physician stated that the small dose of Doxepin that Robbins received might have caused temporary drowsiness, dry mouth, blurred vision, or urinary retention, but *not* the side effects that Robbins asserts.

Robbins's final argument is about his negligence claim. He says that his notices of claim did not contain Trevor Standish's name because the prison would not give it to him. And, he continues, when he finally did discover Standish's name, he amended his federal complaint to include it. From this, Robbins contends that Standish received actual notice of his claim and therefore suffered no prejudice. But amending his federal claim only satisfied the federal procedural requirement; it did not satisfy the separate state-law requirement that Robbins amend his notice of claim with Standish's name. Failure to satisfy this requirement defeats the negligence claim. *See* WIS. STAT. § 893.82(5); *Kellner v. Christian*, 525 N.W.2d 286, 290 (Wis. Ct. App. 1994) (holding that the requirements of § 893.82(5) must be strictly complied with even when it produces "harsh consequences"); *see also Carlson v. Pepin County*, 481 N.W.2d 498, 503 (Wis. Ct. App. 1992). Moreover, even if we overlooked this defect, Robbins would lose on the merits. As with his Eighth Amendment claim, Robbins must show causation—that the medication Standish gave him caused the physical harms he experienced. *See Coffey v. City of Milwaukee*, 74 Wis.2d 526, 531 (1976). And as we have explained, he has offered no such evidence.

Accordingly, the judgment is AFFIRMED.