Sheree TOBIAS, Plaintiff-Respondent,†

v.

COUNTY OF RACINE, Defendant-Appellant.

Court of Appeals

*No. 92–1284. Submitted on briefs June 4, 1993.—Decided August 11, 1993.*

(Also reported in 507 N.W.2d 340.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *LeRoy Kramer, III*, deputy corporation counsel of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Eugene A. Gasiorkiewicz* and *Alice A. Nejedlo* of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

An amicus brief was submitted by *Charles H. Bohl* and *Erika T. Flierl* of *Frisch Dudek, Ltd.*, of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. The county of Racine appeals from a judgment awarding money damages to Sheree Tobias for the wrongful death of her daughter, Diana Jo White. We must decide whether a governmental entity may be held liable when its human services depart-

ment fails to prevent the drive-by shooting death of a runaway child. We hold that, in this case, the county is not liable for its alleged negligence because any negligence was not causal. We therefore reverse the circuit court's judgment.

Diana Jo had a six-year history of contacts with the Racine County Human Services Department. A significant number of those contacts involved runaway complaints, which were also referred to the police. In 1988, Diana Jo became the subject of a child in need of protection and services (CHIPS) proceeding and was placed in a foster home. She began to run away from the foster home almost immediately, and after being detained pending her court appearance, she was placed in a different home. She ran away from that home several times during her thirteen-month placement. Each time she ran, the juvenile court issued *capias* orders to enforce the foster care placements.

Diana Jo was returned to her family's care in December 1989. Juvenile court jurisdiction ended on January 21, 1990. In anticipation of that date, a social worker from the department met with Diana Jo and Sheree and offered to continue voluntary services. Sheree signed a social services agreement in which she agreed to continue with counseling. The family met with a counselor several times between January and the time of Diana Jo's death.

In late April, Sheree called the police and reported Diana Jo as a runaway. On May 10, Diana Jo again ran away from home. Sheree or her husband contacted the counseling agency on May 10 or 11 and expressed concern about Diana Jo's whereabouts. The counselor contacted the department on the same day, and a social worker began to search for Diana Jo. Sheree also con-

tacted family members and friends and asked them to help her in the search.

On May 17, Sheree contacted the department and asked that a *capias* be issued. An employee of the department told Sheree that a *capias* would be put out. On May 25, a caseworker learned that Diana Jo was in an apartment in a known dangerous section of Racine. The caseworker went to the apartment and "observed [Diana Jo's] condition to be safe." She attempted to convince Diana Jo to return home, but Diana Jo refused and threatened to jump out of the car. The caseworker then returned Diana Jo to the apartment after obtaining a promise that the child would attend a counseling session the following week.

After leaving Diana Jo, the caseworker approached a police officer near the apartment and explained the situation, asking him to help. The officer responded that he could not arrest Diana Jo because no *capias* order was in effect. He told the caseworker that Sheree could accompany the police to the apartment and take Diana Jo home. Sheree chose not to go to the apartment. On May 26, Diana Jo called the caseworker and told her that she had left the apartment. On May 27, shortly before midnight, Diana Jo was shot and killed by an unknown assailant near the apartment in which she had stayed.

Sheree brought a wrongful death action against Racine county, alleging that the department was negligent when it failed to issue a *capias* order for Diana Jo's arrest. The complaint alleged that the department's failure to protect Diana Jo from the drive-by shooting caused her death. The county's motions for summary judgment and dismissal were denied. The jury returned a verdict against the county, and the circuit

court denied the county's postverdict motions. The county appeals from the judgment.

■

The county argues, in part, that it should not be liable because of the doctrine of superseding cause. "[S]uperseding cause is a means of relieving the first actor from liability where it would be wholly unreasonable for policy reasons to make the defendant answer in damages for his negligence, even though that negligence was considered a substantial factor by the jury." *Stewart v. Wulf,* 85 Wis. 2d 461, 476, 271 N.W.2d 79, 86 (1978). Whether public policy precludes liability is a question of law that is decided after the jury finds causal negligence. *See Merlino v. Mutual Serv. Casualty Ins.,* 23 Wis. 2d 571, 580, 127 N.W.2d 741, 746 (1964).

■

In this case, the jury's special verdict found the county causally negligent in Diana Jo's death. We assume without deciding that the jury's verdict is supported by credible evidence. *See In re A.E.,* 163 Wis. 2d 270, 273, 471 N.W.2d 519, 520 (Ct. App. 1991). We therefore assume, without deciding, that the county was negligent and that it breached its duty of care.[1]

---

[1] In *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989), the United States Supreme Court held that the county agency had no duty, under the due process clause of the fourteenth amendment of the United States Constitution, to protect a four-year-old boy against abuse by his father while the child was in the father's custody. *Id.* at 201–02. The mother had sued the county by means of a § 1983 cause of action. *Id.* at 193. The Supreme Court wrote, however, that the "people of Wisconsin may well prefer a system of liability which would place upon . . . its officials the responsibility for failure to act in situations such as the present one. They may create such

The remaining issue is whether Diana Jo's act of running away and her assailant's act of shooting her constitute superseding causes which preclude liability. We now proceed to the policy analysis.

■■■

Our supreme court has set out several public policy factors to be considered when determining whether liability for negligence should be imposed. *See Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976).[2] The doctrine of superseding cause is another way of saying that the injury is too remote from the negligence to impose liability, which is one of the factors set out in *Coffey. See Morgan v. Pennsylvania Gen. Ins.,* 87 Wis. 2d 723, 737–38, 275 N.W.2d 660, 667 (1979). Because the *Coffey* policy considerations are listed disjunctively, we need only find that one factor is satisfied in order to relieve the county of

a system . . . by changing the tort law of the State. . . ." *Id.* at 203. We certified this case to our supreme court requesting it to rule on whether Wisconsin should establish that tort liability. The certification was declined. Because we assume, without deciding, that the county had such a duty and that it breached its duty, the question of whether there is *in fact* such a duty existing in Wisconsin must be left to another day.

[2] The public policy reasons include:

(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976).

liability in this case. The only factor we need discuss is whether the "injury is too remote from the negligence." We decide that the answer is "yes" in this case based upon our conclusion that there was a superseding cause which rendered the injury too remote.

The RESTATEMENT (SECOND) OF TORTS § 447 (1964) provides the framework for determining whether an intervening *negligent* act is a superseding cause. *See Merlino*, 23 Wis. 2d at 580, 127 N.W.2d at 746.[3] This RESTATEMENT section is not directly applicable in our case because the intervening acts of running away and shooting are intentional rather than negligent acts. However, we find another section of the RESTATEMENT instructive. The RESTATEMENT (SECOND) OF TORTS § 448 (1964) states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might

---

[3] The RESTATEMENT (SECOND) OF TORTS § 447 (1964) provides:

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

be created, and that a third person might avail himself [or herself] of the opportunity to commit such a tort or crime.

Arguably, the county's negligent failure to issue a *capias* for Diana Jo's arrest created "a situation which afforded an opportunity to [a] third person to commit . . . [a] crime." *See* RESTATEMENT § 448. However, the county could not have foreseen that a third person would commit a crime against Diana Jo *because of* the opportunity created by the county's negligence. At best, the county should have been aware that children who live on the streets are exposed to dangerous situations. It should have realized that Diana Jo was safer at home than she was in the streets. It does not follow that the county should be liable because a crime was indeed committed against Diana Jo.

First, we agree with the county's assertion that even if Diana Jo had been arrested, she would in all likelihood have returned to the streets at her earliest opportunity. Thus, any danger to which Diana Jo was exposed was essentially continuous and existed each time she chose to run from her home. Second, and more importantly, the drive-by shooting that took Diana Jo's life could have happened at any time. It was a random shooting by an unknown assailant—Diana Jo was not a specific target. The shooting could have occurred on any given day at any given time, even if Diana Jo were not running at that time.

In short, the county could not have anticipated that an unknown assailant would take advantage of Diana Jo's runaway status and shoot her. Diana Jo was in no more or less danger of being shot than was any other child on the street at that time. The likelihood of

being killed in a random shooting is so remote that we will not impose liability upon the county for failure to anticipate it. We conclude that Diana Jo's death was too remote from the county's negligence to impose liability. We therefore reverse the judgment.

*By the Court.*—Judgment reversed.