Thomas M. GIEBEL and Nancy L. Giebel, Plaintiffs-Respondents,†

v.

Curt W. RICHARDS, John M. Markworth, all individually and doing business as R.M.G. Partnership, and State Farm General Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 97–2085. Oral argument December 8, 1998.—Decided January 19, 1999.*

(Also reported in 591 N.W.2d 901.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Emile H. Banks, Jr.* and *Vicki L. Arrowood,* of *Kasdorf, Lewis & Swietlik, S.C.,* of Milwaukee. There was oral argument by *Emile H. Banks, Jr.*

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Richard H. Hart* and *Patricia A. Brown* of *Hart Law Offices,* of Milwaukee. There was oral argument by *Richard H. Hart.*

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J.  Curt W. Richards and John M. Markworth, individually and doing business as R.M.G. Partnership, and their insurer, State Farm General Insurance Company, appeal from the judgment, following a jury trial, awarding damages of $34,400 to Thomas M. and Nancy L. Giebel for their garage and attached building, which were destroyed as the result of a fire started by an arsonist on the adjoining property, an apartment building owned by R.M.G. Partnership.

The appellants argue that the trial court erred: (1) in failing to include the arsonist on the verdict; (2) in not dismissing the cause of action for nuisance; (3) in not dismissing the cause of action for trespass; (4) in allowing the Giebels to introduce administrative code provisions into evidence; (5) in concluding that the defendants owed the Giebels a duty of care in this case,

470

given that the act of the arsonist was not foreseeable, and given that they (the defendants) cannot be held liable for acts of their tenants; (6) in concluding that the doctrine of superseding cause did not relieve the defendants of liability; and (7) in concluding that public policy factors did not relieve the defendants of liability. They also argue for a new trial under § 805.15(1), STATS., "based on the errors that were made during the course of trial . . . and also in the interest of justice, because the errors . . . prevented the real issues in this case from being tried."

We conclude that, under *Tobias v. County of Racine*, 179 Wis. 2d 155, 507 N.W.2d 340 (Ct. App. 1993), the arsonist's actions constituted a superseding cause, thus relieving the appellants of liability. Accordingly, we reverse.[1]

## I. BACKGROUND

According to the trial evidence, the Giebels owned a building and attached garage in Cudahy, next to a three-unit apartment building owned by the R.M.G. Partnership and insured by State Farm. From time to time, garbage carts, garbage, discarded furniture and other items from the apartment building property spilled over onto the Giebels' property and, sometimes, were placed up against their garage. Such was the case in late April 1995, when, some witnesses surmised, tenants living in the R.M.G. building may have been responsible for the accumulation of garbage on the Giebels' property.

---

[1] Resolving the appeal on this basis obviates the need to address any of the remaining arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

Neighbors complained to the City of Cudahy and, as a result of at least one complaint, the Cudahy Plumbing and Sanitation Inspector, in a letter dated April 27, 1995, notified the R.M.G. Partnership:

> Please be advised, due to complaints at your property . . . you are hereby notified to clean up all garbage, junk and debris. You shall have the property cleaned up by: May 5, 1995
>
> If the property is not cleaned up by this date, City crews will be ordered to do the clean up and you will be billed for all costs incurred. This letter will be your only notice.
>
> If you have any questions regarding the above, you may contact me at 769–2210 between 8:00 AM and 9:00 AM.

Richards, one of the two R.M.G. partners, received the notice on May 1. That same day, Richards contacted one of the two persons to whom R.M.G. was in the process of selling the property because, during the transitional period leading to the sale, the new owners had assumed responsibility for collecting rents, and managing and maintaining the building. Richards advised him of the notice, told him to look at the property, and instructed that "they clean it thoroughly" or, if they could not, that "they were to call me back." Richards received a call back the next day. He testified:

> I was told that there was garbage material, mattress, couches, whatever, that was out there. . . . And they . . . weren't able to pick it up, was too much. I asked them where was it. Now, they said [it] was at the rear of the property by the garbage cans. I said, okay. It was late in the evening. So I could not get a hold of anybody in Cudahy. The next

morning I called and asked for a special pickup. They said they'd pick it up, but that is what I did.

Within a variance of a day or two, additional evidence corroborated Richards's account. Testimony from a foreman for the Cudahy Department of Public Works and a "Special Pick Ups" form established that, on May 4, 1995, Richards called in his request for Cudahy to clean up the garbage, and that Cudahy had scheduled the pick-up for May 9 at 9:15 a.m.

On the night of May 7, however, less than two days before the clean-up would have taken place, an arsonist ignited the garbage and the resulting fire destroyed the Giebels' property. The arsonist was apprehended and ultimately convicted of this arson—one of eight he set that night in cars, garbage, and other property in the neighboring blocks.

The jury found that R.M.G., its tenants, and the Giebels all were negligent with respect to the placement of the garbage and that their negligence was a cause of the damage to the Giebels' property. The jury allocated the causal negligence at 55% to R.M.G., 30% to the tenants, and 15% to the Giebels. The jury also found that the accumulation of the garbage constituted a causal nuisance that R.M.G. knew or should have known about, and should have remedied, and also constituted a causal trespass that R.M.G. should have prevented or abated. The trial court denied the defendants' postverdict motions and entered judgment for the Giebels.

## II.  ANALYSIS

The appellants argue, among their many challenges, that the doctrine of superseding cause and its related public policy considerations relieve them of liability. They are correct.

In *Tobias*, this court summarized the doctrine of superseding cause and reiterated our standard of review:

> "[S]uperseding cause is a means of relieving the first actor from liability where it would be wholly unreasonable for policy reasons to make the defendant answer in damages for his negligence, even though that negligence was considered a substantial factor by the jury." Whether public policy precludes liability is a question of law that is decided after the jury finds causal negligence.

*Tobias*, 179 Wis. 2d at 160, 507 N.W.2d at 341 (citations omitted; alteration in *Tobias*). As in *Tobias*, "[w]e assume . . . that the jury's verdict [was] supported by credible evidence[,] . . . that [the defendants were] negligent[,] and that [they] breached [their] duty of care." *Id.* Thus, the remaining issue is whether the arsonist's act of setting fire to the garbage constituted a superseding cause precluding liability. *See id.* at 161, 507 N.W.2d at 341–42.

In *Tobias*, we also explained that, under the doctrine of superseding cause, we must examine the public policy considerations articulated in *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976),[2] and, if any one of the six *Coffey* criteria is

---

[2] In *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 247 N.W.2d 132 (1976), the supreme court explained:

> The application of the public policy considerations is solely a function of the court. Thus this court has held that even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) [t]he injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of

satisfied, we must relieve the negligent defendant of liability. *See Tobias*, 179 Wis. 2d at 161–62, 507 N.W.2d at 342. In this case, we conclude that at least three of the *Coffey* criteria are satisfied, thus precluding appellants' liability:

> (1) [t]he injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm.

*Coffey*, 74 Wis. 2d at 541, 247 N.W.2d at 140.

■ The Giebels introduced evidence that suggested that R.M.G. knew or should have known of a serious and chronic garbage problem on and adjacent to its property, and further, that R.M.G. knew or should have known of Cudahy's history of garbage arsons. The evidence on these points, however, was very sketchy and almost entirely speculative. At best, the evidence came nowhere close to establishing the likelihood that an arsonist would ignite the garbage or that, somehow, R.M.G. could ever have viewed such arson as anything more than the most remote possibility. *See Conroy v. Marquette Univ.*, 220 Wis. 2d 81, 87, 582 N.W.2d 126, 129 (Ct. App. 1998) ("The word 'remote,' as used in this context, means 'removed or separated from the negligence in time, place, or sequence of events.' "). This is critical because, as we explained in *Tobias*, "the likelihood" of the third person's action relates directly to

---

recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.* at 541, 247 N.W.2d at 140 (citations omitted).

whether the action constitutes a superseding cause. *See Tobias*, 179 Wis. 2d at 162–63, 507 N.W.2d at 342. We quoted the RESTATEMENT (SECOND) OF TORTS § 448 (1964):

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, *although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime*, unless the actor at the time of his [or her] negligent conduct realized or should have realized *the likelihood* that such a situation might be created, and that a third person might avail himself [or herself] of the opportunity to commit such a tort or crime.

*Tobias*, 179 Wis. 2d at 162–63, 507 N.W.2d at 342 (second alteration in *Tobias*; emphasis added). Thus, even assuming, as we must given the jury's verdicts, that R.M.G.'s neglect of the garbage "created a situation which afforded an opportunity" for the arsonist, it remained highly *unlikely* or, in the words of *Coffey*, "too highly extraordinary," *Coffey*, 74 Wis. 2d at 541, 247 N.W.2d at 140, that an arsonist would come along and ignite the garbage. *See also Conroy*, 220 Wis. 2d at 90, 582 N.W.2d at 130 ("this type of negligent conduct would not ordinarily result in such drastic consequences").

Therefore, we conclude that the appellants' liability is precluded under the doctrine of superseding cause and, accordingly, we reverse and remand to the trial court for entry of judgment dismissing the case.

*By the Court.*—Judgment reversed.