In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3484

SCOTTSDALE INSURANCE CO.,

*Plaintiff-Appellant,*

v.

SUBSCRIPTION PLUS, INC. and KARLEEN HILLERY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-539-C—**Barbara B. Crabb**, *Chief Judge.*

SUBMITTED JUNE 14, 2002—DECIDED JULY 15, 2002

Before FLAUM, *Chief Judge*, and HARLINGTON WOOD, JR.,
and POSNER, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal requires us to consider
the duty of a liability insurance company (Scottsdale) to de-
fend its insureds (Subscription Plus and Karleen Hillery)—
especially against bad claims. Subscription Plus, owned and
operated by Hillery, is in the business of processing maga-
zine subscriptions. It made a contract with Y.E.S.!, a sales
agency, whereby Y.E.S.! was to procure magazine subscrip-
tions for Subscription Plus. Salesmen employed by Y.E.S.!
travel around the country in vans, selling subscriptions.

Joseph Wild, one of these salesmen, while traveling in a van owned by Y.E.S.!'s owner and driven by another employee of that company, was killed when the van crashed because of the negligence of the driver, who was later convicted of negligent homicide. Wild's parents brought a diversity personal injury suit in federal court against, among others, Subscription Plus and Hillery, both insured under a CGL (commercial general liability) policy issued by Scottsdale. In *Wild v. Subscription Plus, Inc.*, No. 01-3406, 2002 WL 1076748 (7th Cir. May 31, 2002), we affirmed the district court's dismissal of the Wilds' claim against Subscription Plus; because Y.E.S.! was an independent contractor, the negligence of its employee (the driver of the van in which Wild was killed) could not be imputed to Subscription Plus. The Wilds' claim against Hillery, Subscription Plus's owner, remains pending in the district court. But its fate is readily predictable from the disposition of the claim against her company, not to mention the principle of limited liability, which generally insulates a corporate shareholder from personal liability for torts committed by the corporation.

Before the district court handed down its decision in *Wild*, Scottsdale had brought the present suit, also a diversity suit, against its insureds, seeking a declaration that it had no duty either to defend the suit by the Wilds or to indemnify its insureds should they settle with the Wilds or suffer an adverse judgment in the Wilds' suit. Applying Oklahoma law, which all agree governs the interpretation of the insurance policy, the district judge, prior to deciding the merits of the Wilds' suit, ruled that Scottsdale had a duty to defend the suit. Later, however, though again before disposing of the tort suit, she ruled that the insurance company had no duty to indemnify the two insureds, because the accident was not covered by the policy after all. Scottsdale appeals from the judgment that it had a duty to defend and from the court's correlative order, based on Oklahoma insurance law,

that it reimburse the insureds for the expense of defending against the tort suit.

At our request, the parties submitted supplemental briefs addressing the bearing of our decision affirming the dismissal of the Wilds' suit. The insurance company points out that in a parallel suit brought by another victim of the van accident but pending in a Wisconsin state court rather than in a federal district court, the state judge has held that the company has no duty to defend (his decision is on appeal to the state's intermediate appellate court); the company asks us therefore to direct the district court to abstain in favor of the state proceeding. The insureds counter that findings made by the district court in the *Wild* litigation and upheld by this court—namely that Y.E.S.! was an independent contractor, that the driver of the van was its employee, and that Y.E.S.!'s owner was the van's owner—demonstrate that the insurance company's grounds for refusing to defend the Wilds' suit against the insureds had no merit. For example, Scottsdale relies on an exclusion in the CGL policy for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' [defined elsewhere in the policy as 'a land motor vehicle'] . . . owned or operated by or rented or loaned to any insured." Because the van was not owned or operated by, or rented or loaned to, either of the insureds, nor used by it (as it would have been had the van's driver been an employee of Subscription Plus), the exclusion is inapplicable. Scottsdale points out that its insureds could have but did not elect "business auto" insurance as part of the CGL policy, but that is just the mirror image of the exclusion.

Scottsdale further argues, however, that under conventional principles of tort law (presumably those of Wisconsin, which as we assumed in *Wild v. Subscription Plus, Inc.*, *supra*, at *5-6, surely would govern the tort issues in the

*Wild* litigation), the van driver's negligence, being criminal, was a "supervening cause" (more informatively, *superseding* cause, see, e.g., *Henry v. Merck & Co.*, 877 F.2d 1489, 1495 n. 10 (10th Cir. 1989)) of Wild's death. *Stewart v. Wulf*, 271 N.W.2d 79, 85-86 (Wis. 1978); *Jutzi-Johnson v. United States*, 263 F.3d 753, 756 (7th Cir. 2001). In that event the insureds, even if they had been the driver's employers, would not be liable. The relevance of this argument is obscure, to say the least. It amounts to arguing that the Wilds' case against the insureds was weak; but so what? The duty to defend is not just a duty to defend against good claims. That would merge the duty to defend with the duty to indemnify, since the latter arises only when the claim against the insured has enough merit to produce a judgment for the claimant, or a settlement.

We shall return to this point, but first we note that the premise of Scottsdale's argument—that the van driver's criminal negligence was a superseding cause that got the insureds off the liability hook—is unsound. As made clear by decisions in cases similar to this one, see *Powell v. Drumheller*, 653 A.2d 619, 624 (Pa. 1995), and *Pavlides v. Niles Gun Show, Inc.*, 637 N.E.2d 404, 410 (Ohio App. 1994), criminal acts are not superseding causes per se. It is true that acts that are either criminal or intentionally tortious (these are overlapping categories) are more likely to be adjudged superseding causes than merely negligent acts. See *Tobias v. County of Racine*, 507 N.W.2d 340, 342-43 (Wis. App. 1993); *Henry v. Merck & Co., supra*, 877 F.2d at 1495; *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 620 (10th Cir. 1998). But the distinction between the two classes of act collapses in a case such as this, where negligent conduct is made criminal because of its consequences. "Take two cases. In one a reckless driver narrowly misses hitting a child; in the other, a no more reckless driver hits a child. As far as mental state is concerned, both are equally

blameworthy; but the second driver will be punished much more heavily. The reason is that the community attaches moral significance to consequences as well as to states of mind." *Milner v. Apfel*, 148 F.3d 812, 815 (7th Cir. 1998) (citations omitted). Similarly, two acts may be negligent to the same degree, but if one causes harm and the other does not, the former may result in a criminal prosecution and the latter merely in the issuance of a traffic ticket.

The driver of the Y.E.S.! van was prosecuted because of the lethal consequences of his negligence (six others besides Wild were killed, and several more were injured); but it was still negligence; there was no other culpable cause. "Animating the doctrine [of superseding cause] is the idea that it is unreasonable to make a person liable for such improbable consequences of negligent activity as could hardly figure in his deciding how careful he should be." *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 447 (7th Cir. 2000). There is nothing improbable about negligence.

But there is a deeper problem with applying the doctrine of superseding causes to this case: there was no other cause to "supersede" the van driver's negligence, no other candidate, in other words, for a culpable cause. In a loose sense of "cause," it is true, one not freighted with overtones of culpability or any other conception of legal or moral responsibility, Wild's death had many causes—his presence in the van, for example, or for that matter his birth. But such "causes" are irrelevant to liability. A superseding cause is something culpable that intervenes between the defendant's negligence and the plaintiff's injury, some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence. "Once the defendant's negligence is established, because injury of some kind was to be anticipated, intervening causes which could not reasonably be foreseen, and which are no normal

part of the risk created, may bring about results of an entirely different kind." W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 44, pp. 311-12 (5th ed. 1984). The van driver's criminal negligence was not an intervening cause of Wild's death. (What could it have intervened between?) There was no intervening cause. With the present case compare *Leposki v. Railway Express Agency, Inc.*, 297 F.2d 849, 849-51 (3d Cir. 1962), where the defendant's truck leaked gasoline and the plaintiff was injured when a kid dropped a lighted match into the pool of gasoline that formed from the leak. The dropping of the lighted match intervened between the defendant's negligence in spilling the gasoline and the plaintiff's injury. See also *Giebel v. Richards*, 591 N.W.2d 901, 904 (Wis. App. 1999).

The basis of Subscription Plus's liability for the driver's tort, had he been an employee of Subscription Plus, would have been the doctrine of respondeat superior; and provided the driver was acting within the scope of employment when the accident occurred, his state of mind would have made no difference, since the doctrine is applicable to intentional and reckless as well as merely negligent tortfeasing. *Horn v. Duke Homes*, 755 F.2d 599, 605 (7th Cir. 1985). The proviso is critical. The employee's state of mind will often be relevant to deciding whether he was acting within the scope of his employment or had embarked on a frolic of his own; whether, for example, if he was a bill collector, he had struck the debtor in an effort to collect the debt owed his employer or had struck him out of personal malice. In ambiguous circumstances, "the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong" for the employer to be liable. *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1421-22 (7th Cir. 1986); see also *Olson v. Connerly*, 457 N.W.2d 479, 483 (Wis. 1990) ("an employee may be

found to have acted within the scope of his or her employment as long as the employee was at least partially actuated by a purpose to serve the employer"); *Stephenson v. Universal Metrics, Inc.*, 633 N.W.2d 707, 712 (Wis. App. 2001); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994); *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262-63 (10th Cir. 1995); *Wood v. United States*, 995 F.2d 1122, 1129 (1st Cir. 1993) (en banc). But once *that* intention is established, the fact that the tort was intentional, or that the employee knew there was a high risk of injury and so was reckless and not merely negligent in failing to take steps to avoid it, falls out of the picture.

The present case is in illuminating contrast to our decision in *Jutzi-Johnson*, cited earlier, where the defendant jail officials were accused of negligence in failing to prevent the suicide of an inmate and the argument was that the suicide was a superseding cause (we held it wasn't). When, as in this case, the defendant's liability is based on the doctrine of respondeat superior, the action of the defendant's employee is what creates liability, not what cuts it off. See *L.L.N. v. Clauder*, 563 N.W.2d 434, 445 n. 21 (Wis. 1997); *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 4 P.3d 1242, 1251 n. 31 (Okla. 2000); *Nelson v. Pollay*, 916 P.2d 1369, 1374 n. 23 (Okla. 1996).

Speaking of frolics, we have been on one of our own, since even if the criminal act of the van's driver had been a superseding cause and as a result the insureds could not possibly have lost the Wilds' suit against them, the insurance company would not have been excused from its duty to defend the insureds in that litigation. When a liability insurance policy imposes a duty to defend (not all such policies do—the insured may prefer to pick up the tab for his defense rather than pay a higher premium for the policy), the "insurer must defend even if the allegations are groundless, false or fraudulent." *Hartford Accident & Indemnity Co. v. Gulf*

*Ins. Co.*, 776 F.2d 1380, 1382 (7th Cir. 1985); see also *First Bank of Turley v. Fidelity & Deposit Ins. Co.*, 928 P.2d 298, 303 n. 10 (Okla. 1996); *Ruder & Finn Inc. v. Seaboard Surety Co.*, 422 N.E.2d 518, 521 (N.Y. 1981). Insurance policies used to say just that. The current trend is toward the language found in the policy in this case, language that promises a defense "against any suit." But the effect is the same. Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, *Policyholder's Guide to the Law of Insurance Coverage* § 4.02, p. 4-5 (1997). (If anything, the new language is broader.) Any other rule would have the paradoxical effect that the less meritorious the suit, the less protection a liability insurance policy would give the defendant. If the suit against the insured were meritorious, the insurance company would pick up the tab for defending, but if the suit had no merit the expense of defending it would be borne by the insured. That would make no sense. The insured who has bought a liability policy that entitles him to defense as well as indemnification wants to be defended against claims of liability regardless of their merit. He doesn't want to be stuck with the lawyer's bill just because he wins and therefore doesn't need to look to the insurer for indemnification. If he wanted that he would just buy indemnification, and not defense. The paradox is particularly acute here because the Wilds would probably have had a good case against Subscription Plus if the van's driver had been an employee of Subscription Plus, yet if he had been, and this was clear from the outset, Scottsdale would have had no duty to defend, by virtue of the policy's automobile exclusion.

The insurance company's other arguments for why it had no duty to defend are no stronger. We are given only momentary pause by the district judge's ruling that the company had no duty to indemnify the insureds, that is, that there was no insurance coverage under the policy for the accident after all. The duty of an insurance company to

defend and its duty to indemnify the insured are not wholly congruent even when the duties are stated in the same terms. The obvious difference, the one that we've just been dwelling on, is that there is a duty to defend when, because the claim against the insured is groundless, the duty to indemnify is not triggered. But there is more. As we explained in *Lockwood International, B.V. v. Volm Bag Co.*, 273 F.3d 741, 746 (7th Cir. 2001), "the insured needs a defense before he knows whether the claim that has been made against him is covered by the policy, assuming there is doubt on the question. If the duty to defend were no broader than the duty to indemnify, there would be the paradox that an insured exonerated after trial would have no claim against the insurance company for his defense costs, since the company would have no duty to indemnify him for a loss resulting from a judgment or settlement in the suit against the insured." See also *First Bank of Turley v. Fidelity & Deposit Ins. Co.*, *supra*, 928 P.2d at 303-04 and nn. 14, 16. That is the paradox to which Scottsdale, unmindful of *Lockwood*, appeals in this case.

Still, if a court rejects the duty to indemnify for reasons equally applicable to the duty to defend, as the district judge, whose ruling on indemnity surprisingly makes no reference to her earlier ruling on the duty to defend, appears to have done, that rejection bears upon the other duty. The district judge thought it clear that the policy did not cover the accident, both because of the automobile exclusion and because the driver's criminal negligence was a superseding cause. We have made clear why we think the judge was wrong on both points—which means that Scottsdale had a (potential) duty to indemnify as well as a duty to defend. But as the insureds, doubtless because they have not and probably never will have to pay a cent to the Wilds, are not appealing from the ruling that there was no duty to indemnify, the point is moot.

But what, finally, of the pendency in the Wisconsin appellate court of the state trial judge's diametrically opposed ruling on Scottsdale's duty to defend? (His grounds, both advanced by Scottsdale in this appeal and rejected by us earlier in this opinion, were that the accident fell within the policy's automobile exclusion and that the van driver's criminal negligence was a superseding cause of the accident.) It is for just such conflicts that the doctrines of res judicata and collateral estoppel are designed. The Wisconsin courts will have to decide, on the basis of Wisconsin law, whether the ruling of the district judge here affirmed that Scottsdale had a duty to defend, and therefore (see *First Bank of Turley v. Fidelity & Deposit Ins. Co.*, *supra*, 928 P.2d at 305 and n. 26) owes the insureds the cost of the defense that it should have borne, is entitled to preclusive effect in the Wisconsin litigation. This is not a situation in which a party is subjected to two inconsistent orders and cannot obey both; Scottsdale could be made to pay the expenses of the insureds in the federal court case but not in the state court case.

AFFIRMED.

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of Appeals for the Seventh Circuit*